JOSEPH E. YOUNG, appellant, v. JAMES O'KEEFE et al. (members of Board of Trustees of Policemen's Pension Fund of Sioux City), appellees.

No. 49160.

(Reported in 82 N.W.2d 111)

April 3, 1957.

Brown & Nordenson, of Sioux City, for appellant.

George F. Davis and Tom E. Murray, both of Sioux City, for appellees.

Smith, J.—The facts constituting the background here will be found in Young v. O'Keefe, 246 Iowa 1182, 69 N.W.2d 534. There is no factual conflict and no factual change since the former decision—only amendment of the relevant statutes to include male as well as female survivors of deceased pensioners.

Our decision in the earlier case was based squarely and solely on the statutory language that did not include surviving widowers. That decision was rendered April 5, 1955. Before petition for rehearing was filed the legislature (56th General Assembly) amended chapters 410 and 411 of the Iowa Code, 1954, for the obvious purpose of remedying the omission in the then existing statutes. (We shall refer to them in the singular,

as, for our purposes, the same explanation applies to both.) The petition for rehearing called attention to the change in statute but was nevertheless denied.

The present proceeding was then commenced (September 8, 1955) by a new demand on defendant Board, followed by certiorari upon denial of it; and this appeal is from the court's decision annulling the writ.

No new evidence was offered. There is only the statutory change. We have to determine whether it operated retroactively to take effect as of the date of Mrs. Young's death; or, if not, whether it created a new right, available to plaintiff, commencing with its enactment.

I. Section 410.10, Iowa Code of 1954, as quoted by plaintiff, originally provided: "* * * Upon the death of any acting or retired member of such [police] departments, leaving a widow * * * there shall be paid out of said fund as follows:

"1. To the surviving widow, so long as she remains unmarried and of good moral character, the sum of $50 a month.

"3. * * * the benefits provided by these sections shall be subject to the following definitions: The term 'widow' shall mean only such surviving spouse of a marriage contracted prior to the retirement of the deceased member from active service * * *."

Section 411.1(10), Code of Iowa 1954, in the next chapter, originally provided: " 'Widow' shall mean only such surviving spouse of a marriage consummated prior to the retirement of the deceased member * * *."

And section 411.6(13): "In the event of the death of any member receiving retirement allowance under * * * this section, there shall be paid a pension: (a) to his widow to continue during her widowhood equal to * * *."

These provisions were held in the former case insufficient under either chapter as bases of recovery by a surviving *widower*. The two chapters (410 and 411) sometimes called respectively "pension statute" and "retirement statute" seem to differ principally as designating different classes of cities affected. Young v. O'Keefe, supra, 246 Iowa at pages 1185, 1186.

The legislature, in the spring of 1955, amended these pro-

visions as we have said, by provisions known as House Files 174 and 229. The change became effective July 4, 1955. Whether it was retroactive (retrospective) or whether designed only as "clarification" for future cases only is the subject of our first inquiry. Future cases of men applicants may reasonably be anticipated to become more numerous as participation of women in police activity continues to increase.

Each amendment was properly worded to include all "surviving spouses", otherwise qualified under the statute, regardless of sex. But no language is changed to authorize a retrospective operation. One statute still reads, "Upon the *death* of any acting or retired member of such departments * * *"; the other, "In the event of the *death* of any member * * *." They merely substitute for "surviving widow" the more comprehensive term "surviving spouse." But they take effect upon the death of the spouse.

The legislative intent must be gathered from the language used. Had the change been intended to relate back or to create new rights for already surviving husbands—rights not acquired at their spouses' deaths—they should have plainly so stated.

Before a statute will be given a retroactive effect the legislative intent that it so operate must be clear. Retroactive legislation is not favored. 82 C. J. S., Statutes, sections 414, 415; 50 Am. Jur., Statutes, sections 477, 478; Bascom v. District Court, 231 Iowa 360, 362, 1 N.W.2d 220.

Statutes should be construed prospectively, and not retrospectively. State ex rel. Shaver v. Iowa Telephone Co., 175 Iowa 607, 623, 154 N.W. 678, Ann. Cas. 1917E 539. See the early decision in Bartruff v. Remey, 15 Iowa 257; and the somewhat later case of Knoulton v. Redenbaugh, 40 Iowa 114, 116, where it is said "a statute will not be construed to be retrospective, *unless the intention of the legislature to make it so is clearly expressed.*" (Emphasis supplied.) See also Thomas v. Disbrow, 208 Iowa 873, 876 et seq., 224 N.W. 36.

The amendment involved here does not come within any exception called to our attention, such as is discussed in 50 Am. Jur. (supra) section 479; or 82 C. J. S. (supra) section 421.

Plaintiff refers to "Explanation in H. F. 174" (referring to amendment to chapter 410) and "Explanation H. F. 229" (to amendment to chapter 411) apparently as containing language indicating there was some legislative intent the amendatory legislation should act retrospectively. We find no language so indicating. Both "explanations" state they are "for the purpose of clarification." One says "for the reason there are women police and police matrons entitled to benefits under this Section [410.10], and such benefits should pass to the surviving spouse in the same manner as benefits belonging to the husband were passed on to the widow."

The "explanation" as to the amendment to Code section 411.6(13) says: "As the statute now reads, it raises serious question of the right of the husband of a deceased police matron or policewoman to receive benefits under the chapter. The effect of the Bill is to substitute the word 'spouse' where the word 'widow' appears * * *." Whether this understatement was used in the light of our former (April 5) decision does not appear. Whether it could make any difference if it was we need not determine.

There is no slightest hint in either "explanation" that the amendment was to operate retrospectively. No word indicates the so-called "clarification" was intended for any purpose other than to make the law clear for future use. We need express no opinion even as to the admissibility of such "explanations" not written into and made a part of the statute. So far as appears from the language of the changes themselves they are prospective only.

II. The case is further complicated by the fact there was a former decision. The spectre of res judicata arises to haunt plaintiff. The record conclusively establishes that his case was already adjudicated when the statutory change occurred. He seeks here to establish the same status he sought before, by the same evidence.

The basis of the doctrine of res judicata is usually said to be the necessity of a finality to judicial decision. In re Estate of Ramsay, 240 Iowa 50, 59, 35 N.W.2d 651. There is no doubt of its presence here. This is an attempt to assert the same "cause of action."

The term, as used for the purpose of applying the doctrine of res judicata, is defined to mean "the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief. * * * the test most commonly stated is to ascertain whether the * * * evidence which is necessary to sustain" the claim is the same in both cases. 50 C. J. S., Judgments, section 648 (page 88 et seq.), citing United States v. Pan-American Petroleum Co., 55 F.2d 753, 781.

Our own court has (perhaps more succinctly) stated the test " 'is to inquire if the same evidence will maintain both the present and the former action.' " Band v. Reinke, 230 Iowa 515, 520, 298 N.W. 865, 868, quoting Woodward v. Jackson, 85 Iowa 432, 52 N.W. 358; 30 Am. Jur. 918.

"It is only necessary that both actions should affect the same parties, involve the same subject matter, determine the same cause of action." Hoover v. Iowa State Highway Comm., 210 Iowa 1, 8, 230 N.W. 561, 564. See also Coffin v. Knott, 2 (G. Greene) Iowa 582, 52 Am. Dec. 537; Baxter, Reed & Co. v. Myers, 85 Iowa 328, 52 N.W. 234, 39 Am. St. Rep. 298; Hahn v. Miller, 68 Iowa 745, 28 N.W. 51; Hawk & Co. v. Evans, 76 Iowa 593, 41 N.W. 368, 14 Am. St. Rep. 247.

If the purpose of res judicata be to add *finality* to judicial decision, the propriety of its presence here cannot be doubted. A judgment based on plain statutory construction, as was our earlier decision, would not be exactly *final* if the legislature could by subsequent retroactive (nunc pro tunc) change of statute reopen the identical controversy for the benefit of a losing litigant.

III. Plaintiff in printed argument suggests that if the statutory change be held ineffective because not retroactive, "it must of necessity follow" that he "as a member of the legislatively enlarged class" should be granted survivor benefits "at least from the effective date" of the change. That result does not follow.

To accomplish it would require us to hold the amendment not only was *not* retroactive, but that it was sufficient to create a *new* right. The language will not bear that construction.

Again we confront a question of statutory construction. What we have thus far said was based on the fact the language of the amending acts does not permit us to construe them retroactively and that to do so would run into the doctrine of res judicata.

In effect we have held the new legislation was of no avail to plaintiff because it merely enlarged the class of future beneficiaries. It did not purport to admit an already existing widower.

Plaintiff's alternative plea we are now considering must fail for the same or a similar reason. The statutory language of the amendment does not include widowers who were such when it was enacted. Whether he, or those situated as he, could be admitted to the favored class by appropriate language is not before us.

█ IV. We have no disagreement with plaintiff's plea for liberal construction of pension statutes though we think it relates to determination of doubtful factual situations more than to statutory construction. We cannot however substitute our own ideas of justice and equality for the language used by the legislature. Our duty is jealously to guard the rules and processes of the law and not to invade the province of the legislature —to "hew to the line, let the chips fall where they may."

The case is affirmed.—Affirmed.

BLISS, C. J., and GARFIELD, WENNERSTRUM, HAYS, THOMPSON, and PETERSON, JJ., concur.

OLIVER, J., takes no part.