Gardner v. Jaques.

REVERSED.

---

GARDNER ET AL. v. JAQUES ET AL.

1. **Judicial Sale: DEED: NOTICE: INNOCENT PURCHASER.** A, who was insolvent, caused real estate which he had purchased to be deeded to B in fraud of his creditors; a creditor of A, having obtained a judgment against him, levied upon the property and it was sold at judicial sale, C being the purchaser; subsequently C obtained a decree declaring the conveyance from A to B fraudulent, and sustaining the validity of his title, the heirs and administrator of B being parties to the action; after the sheriff's deed had been recorded and before the commencement of the action, B conveyed the land to D who was not made a party and had no notice of the existence of the sheriff's deed: *Held*,

    1. That B's grantees, not having been made parties to the action, are not bound by the decree.
    2. That the judgment against A was not a lien upon his equitable interest in the land conveyed to B, affecting subsequent *bona fide* purchasers without notice.
    3. That the execution and recording of a sheriff's deeds imparts constructive notice to those only who hold or claim under the judgment defendant; strangers and those claiming under an independent or hostile title are not affected thereby.

*Appeal from Wapello Circuit Court.*

FRIDAY, MARCH 24.

ACTION to recover certain land situated in Wapello county. The plaintiffs claim title to the property under a decree had

in the United States District Court, in a cause wherein Wilson and Hall were plaintiffs, and Harriet Harrow and others, widow and heirs of Francis M. Harrow, then deceased, were defendants. The defendants in this action claim title under a conveyance executed by Francis M. Harrow, prior to the proceedings and decree in the United States Court. Neither the purchaser from him nor any one claiming title under this conveyance was made a party in that action. The cause was submitted to the court without a jury, and the following facts were found.

"1. That Charles F. Harrow, who was insolvent, purchased the lot in question of W. D. Evans, who was grantee of the United States and, with the intent to defraud his creditors, caused the deed to be made by Evans to Francis M. Harrow, who was thereby vested with the legal title, July, 1846.

"2. That the State Bank of Indiana, as creditor of Charles F. Harrow, obtained a judgment against him, had an execution issued thereon, and had the lot in controversy, with other property, regularly sold by the sheriff to Hall and Wilson, and the sheriff made a deed to them February 14th, 1850, which was duly recorded in the county, August 13, 1853.

"3. That in 1856 Hall and Wilson commenced suit in the United States District Court of Iowa, making Harriet M. Harrow, widow of Francis M. Harrow, and Albert G. and Frances F. Harrow, his heirs, and Jos. W. Caldwell, administrator of Francis M., defendants. These defendants appeared in that case. In this case the said United States Court decreed that the conveyance of Evans to Francis M. Harrow was fraudulent and void, and that the title was in Hall and Wilson, under and by virtue of the deed to them by the sheriff. That there is a regular and perfect chain of title to the premises, which would vest title to plaintiffs, but for the following facts.

"4. After the sheriff's deed had been made and recorded as before found, but before the suit was commenced in the United States Court, to-wit: July 27th, 1855, Francis M. Harrow and his wife conveyed the premises to J. S. and W. T. Major, and this deed was recorded on July 28th, 1855, and on the 1st of January, 1857, W. T. Major and wife conveyed

their interest to J. S. Major. This deed was recorded on the 3d day of January, 1857, and this vested a perfect title in J. S. Major, from whom there is a regular chain of title to defendants, subject to plaintiff's rights, whatever they may be.

"5. There is no evidence that the Majors had any knowledge in fact of the sheriff's sale and deed to Hall and Wilson when they purchased from Francis M. Harrow, and they would hold the title in fee if they were not affected by the record of the sheriff's deed."

Upon these facts the court rendered judgment for defendants. Plaintiffs appeal.

*H. B. Hendershott*, for appellants.

*William McNett, Stiles & Burton*, and *W. H. C. Jaques*, for appellees.

BECK, J.—It will be observed that the deed to the Majors, under whom defendants claim, was executed after the sale of the land by the sheriff upon the judgment against Charles F. Harrow, and prior to the commencement of the proceedings in the United States District Court, wherein it was adjudged the title of Francis M. Harrow was fraudulent, and that he held the land as trustee for Charles F. Harrow. To this suit the Majors were not made parties. The questions presented for our determination are these:

1. Were the Majors bound by the decree subjecting the lands to the judgment against Charles F. Harrow?

2. Were the Majors charged with notice of the judgment, sheriff's sale and deed, under which the land was adjudged by the decree in the United States Court to vest in Wilson and Hall?

This case is almost identical in facts with *Hultz et al. v. Zollers et al.*, 39 Iowa, 589, the only difference being in the time of the execution of the respective deeds by Francis M. Harrow. In that case the deed was executed after the sheriff's sale, but before the deed by the sheriff was made; in this the conveyance was made subsequently thereto. It will be ob-

served that the lands in each case were conveyed to Francis M. Harrow, and were sought to be held subject to the judgment against Charles F. Harrow.

I.  In the case just named, we hold that the purchasers under Francis M. Harrow, not having been made parties to the action in the United States Court, are not affected by the decree therein.  Of the correctness of this conclusion there can be no doubt.

II.  We also hold that the judgment against Charles F. Harrow was not a lien upon his equitable interest in the lands conveyed to Francis M. Harrow, so as to affect subsequent *bona fide* purchasers, without notice.  This ruling is founded upon a settled doctrine recognized by this court.

III.  We further hold, in the same case, that the purchaser from Francis M. Harrow was not charged with constructive notice of the sheriff's sale, the conveyance to him having been made before the execution of the sheriff's deed.  The statute in force at that time, Code 1851, § 1947, provided that within a prescribed time the judgment and proceeding thereon, under which the sale was had, imparted "*constructive notice*" of the rights of the purchaser.  The deed from Francis M. Harrow was within that time.  We hold that the grantee was not chargeable with constructive notice of the rights of the purchaser at the sheriff's sale; that the statute referred to applied only to those deriving title or claiming interest under the judgment debt, and these only were chargeable with constructive notice.

The case of a purchaser after the sheriff's deed is executed is not different.  The sheriff's deed, after the expiration of the time prescribed in § 1947, of the Code of 1851, above referred to, would impart no notice unless it were filed for record under the registry law then in force, which provided that after such filing and proper entries in the records, they imparted "*constructive notice* to all the world of the rights of the grantee conferred by such instrument."  The notice imparted under this statute was no other or different than that given by the judgment and proceedings thereon, upon which the purchaser at sheriff's sale based his rights.  This con-

structive notice, we have held, affected only those holding or claiming under the defendant in the judgment, and did not reach strangers to that proceeding. No reason can be given why constructive notice of a deed should reach farther and affect parties not chargeable with such notice of a judgment and proceedings thereunder.

The constructive notice, in the case of the recorded sheriff's deed, is imparted to those claiming, under the defendant in the judgment, the title which was divested by the sale, and cannot extend to those claiming under an independent and hostile title. If the title of the judgment defendant was an equitable or trust interest not appearing of record, no notice would be imparted to those claiming adversely thereto.

If this were not so, and "all the world," in the broad sense of the expression as it is used by plaintiff's counsel, must take notice of the transfer of this title by the sheriff's deed, that instrument would, as against the world, convey the title of the land to the purchaser. If such be the result, the purchaser's title would be perfect, and proceedings in equity against the holder of the legal title to subject it to the equity acquired by the purchaser at the sheriff's sale, would be unnecessary, for that sale under this doctrine would defeat the legal title resting in another and vest it in such purchaser; a result that cannot be admitted. The prosecution of an action in chancery to subject the legal title to a judgment against the holder of the equity, is rendered necessary by the doctrine everywhere recognized that purchasers of such legal title are not, in cases of the kind before us, chargeable with constructive notice of the equity set up against them. Plaintiff's grantees, recognizing this principle of law, prosecuted the chancery action in the United States Court in order to subject the legal title to the judgment against the holder of the equity.

The judgment of the Circuit Court is

AFFIRMED.